ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:10CR248 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| RAYMOND THOMAS, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I. Introduction**

On June 3, 2010, Defendant Raymond Thomas was charged through an information with one count of mail fraud and one count of subscribing a false tax return. On July 6, 2010, Thomas appeared before the Court and entered a guilty plea to both charges in the information. On September 23, 2010, the Court sentenced Thomas to 72 months in prison. This memorandum will serve to supplement the Court's oral pronouncement of sentence.

**II. Sentencing Process**

Criminal sentencing is often described as a three-step process. A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

### III. Advisory Guideline Calculations

The parties raised no objections to the Court's calculation of Thomas' advisory guideline range. Accordingly, the Court will not reiterate that calculation herein. Thomas' advisory guideline range was an offense level 20, Criminal History Category I, resulting in an advisory range of 33 to 41 months.

### IV. Kinds of Sentences Available

The final calculated advisory guideline range of imprisonment is 33 to 41 months. The statutory maximum for count 1 is 240 months and the statutory maximum for count 2 is 36 months. The maximum fine for the offense is $250,000, and supervised release of three years may be imposed.

**V. Departure**

Thomas has not argued for a departure in this matter. Furthermore, the Court finds no grounds to depart.

**VI. Variance and § 3553(a) Factors**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence. Based upon those factors, the Court finds that an upward variance is appropriate under the facts presented in this matter.

In reaching its conclusion, the Court considered the nature and circumstances of the offense and the history and characteristics of the defendant. The Court also reviewed the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant; and c) to provide the Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

During the sentencing hearing, the Court detailed its analysis of each of the § 3553(a) factors. The Court intends this memorandum to supplement its oral findings.

There are two primary factors that the Court has relied upon to find that an upward variance is necessary and proper in this matter. First, the advisory guideline range fails to sufficiently take into account the harm to the victims in this matter. In reaching the advisory guideline range, the Court considered only the amount of loss to each victim. Accordingly, the advisory guideline range did not take into account the specific nature of the harm to the victims in this matter.

The Court heard from many of the victims in this matter.  The harm caused by Thomas' conduct reaches far beyond the numbers that generated the advisory guideline range.  First, Thomas took advantage of friends and even family with his fraud.  He promised significant returns through investments in his numerous businesses.  When those businesses began to fail, he simply recruited new victims to cover his losses.  Through his actions, Thomas abused trusted relationships and destroyed far more than just his own family.

In addition, Thomas caused his victims to unknowingly assist in his fraud.  Ann Reilly described her interaction with Thomas and included that he used her "to take advantage of my friend" Rosemary Kilbane.  Thus, Reilly was victimized twice.  Her statement makes clear two things.  First, Thomas took her for everything that she had.  Knowing full well what he was requesting, Thomas asked Reilly for $80,000 to return an investment to another victim, Kilbane.  Not wanting to let her friend down, Reilly secured the money.  In doing so, Reilly left herself penniless.  To provide the full $80,000, Reilly emptied her savings account, an investment account, and all of her deferred compensation.  To add insult to injury, Thomas did not return the money to Kilbane.  Reilly aptly summed up her experience as follows:  "I'm in a very real way imprisoned in my own hell for the rest of my life for trusting a friend.  My true regret is that I involved [Kilbane] and her girls."

Thomas' conduct involving Kilbane is even more egregious.  Kilbane's husband tragically died in an unexpected manner and his death ultimately resulted in a monetary settlement for his family.  While a true friend would have expressed sympathy, it is apparent that Thomas saw this as nothing more than a prime opportunity to continue to fund his fraudulent scheme. Kilbane described that the hardest part of the fraud for her was still to come because she has yet to

inform her adult daughter that Thomas took the money from that settlement and that nothing remains for her. Similar to Reilly, Kilbane also expressed remorse over the fact that she was used. As noted above, Thomas was able to gain an additional $80,000 from Reilly after he stated that Kilbane needed to be repaid. Thus, Kilbane feels somewhat responsible for a portion of Reilly's loss as well.

The Court also heard statements that indicated that Thomas left his own mother with only ten dollars to her name. His siblings have thereafter had to struggle to pay her living expenses. From these experiences, the Court expected to hear a truly remorseful Thomas speak during sentencing. Thomas' lack of remorse is the second reason the Court found that an upward variance was necessary.

While Thomas states that he is sorry for his conduct, his apology is at best equivocal. Thomas appears to hold on to the belief that he was legitimately investing money for his friends and family and that only a bad economy is to blame for everyone's losses. In that aspect, Thomas sounds like a gambling addict. He seems to hold the belief that with just a little more money and a little more time, he could return everyone's investments. The Court finds that Thomas did not demonstrate genuine remorse. Thomas wholly ignored the impact on his victims. He never once addressed the fact that many of his victims will be unable to retire or will have to sacrifice for years to come because of his actions. Instead, he always returns to the fact that his scheme was successful for numerous years and only fell apart once the economy went down. Thomas seems oblivious to the fact that this is the very essence of such a fraudulent scheme. As long as he was able to secure more funds from friends that trusted him, he was able to live the lifestyle he wanted and return money to other investors. Once his friends and family no longer had the means to

invest further, his scheme came crashing down.

Thomas' lack of remorse and seeming lack of awareness of the true scope of the harm he has inflicted warrant an upward variance. Without a significant sentence, the Court has little doubt that Thomas would emerge from prison still blaming nothing but the economy for his victims' losses.

Finally, there were other minor considerations that played a role in the Court's overall sentence. For many years, Thomas was a police officer -- thus his inability to admit to his fraudulent acts is particularly troubling. Thomas was sworn to uphold the law and generated many trusted friendships through his job. He then decided to violate both the law and his friends for little more than his own selfish interests. Furthermore, it does not appear that Thomas sought out victims that could absorb the losses at issue here. Instead, he took advantage of those closest to him, knowing full well that losing their life savings would destroy their lives. This callous attitude toward the well being of his closest family members and friends is disturbing to the Court.

Based upon all of the above, the Court found that a significant upward variance was necessary in this matter to reflect the seriousness of the offense and to deter Thomas from future fraudulent conduct.

## VII. Sentencing Disparities

The Court has identified no sentencing disparities for similarly situated defendants.

## VIII. Conclusion

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Raymond Thomas is hereby committed to the Bureau of Prisons for a term of 72 months on count one and 36 months on count

two to be served concurrently. The Court stated the remaining terms of Thomas' sentence on the record and in its journal entry of conviction. Accordingly, it declines to reiterate those terms herein.

    IT IS SO ORDERED.


 October 12, 2010                                 /s/John R. Adams
Date                                              JOHN R. ADAMS
                                                  UNITED STATES DISTRICT JUDGE